AO 106 (Rev. 01/09) Application for a Search Warrant

~~FILED~~

# UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

for the

District of New Mexico

JUN 19 2019

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | MITCHELL R. ELFERS |
| *or identify the person by name and address)* | ) | CLERK |
| 7640 Central Avenue SE, Rooms 105, 110, 112, 114 | ) | Case No.  19 mr 731 |
| and 219, Albuquerque, New Mexico 87108 more fully | ) | |
| described in Attachment A | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the _____ District of _____ New Mexico _____ *(identify the person or describe property to be searched and give its location)*:  7640 Central Avenue SE, Rooms 105, 110, 112, 114 and 219, Albuquerque, New Mexico 87108 more fully described in Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:  Evidence of, or contraband, fruits of, or other items related to the offense of 18 U.S.C. 1591(a)(1)and(2), 1594(c), 1952(a)(3)(A), 1956(h), and Ttiel 21 U.S.C. Sections 846 and 856(a), as described in Attachment B incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. § ___1591___ , and the application is based on these facts:  See attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Morgan Langer*
*Applicant's signature*

Morgan Langer, Special Agent
*Printed name and title*

Sworn before me by reasonable electronic means.

Date:   06/18/2019

*Laura Fashing*
*Judge's signature*

City and state:  Albuquerque, NM

Laura Fashing, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is described as 7640 Central Avenue SE, Management Office, Albuquerque, New Mexico 87108, is the Rooms 105, 110, 112, 114 and 219, located in a hotel which is called the Best Choice Inn.  The hotel is marked with a blue sign along Central Avenue and the words "Best Choice Inn" on the sign. The hotel is located on the south side of Central Avenue where Central Avenue meets Charleston Street.  The hotel is situated in an "L" formation.   The hotel is adobe/tan in color.

The property to be searched is described as 7640 Central Avenue SE, Albuquerque, New Mexico 87108, Rooms 105, 110, 112, 114 and 219. Rooms 105, 110, 112 and 114 are located on the ground floor of the hotel, while room 219 is located on the second floor.   Like other rooms in the hotel, these rooms are identifiable by having a placard on the door with  the room number inscribed on it.

## ATTACHMENT B

### ITEMS TO BE SEARCHED FOR AND SEIZED

1. Firearms and Ammunition

Any caliber firearms; ammunition; ammunition components and items connected with or pertaining to the possession of firearms including firearm storage cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment.

2. Records/Documents

Documents related to the possession of firearms or ammunition, including receipts for the purchase of firearms or ammunition, receipts for the repair of firearms; photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of any firearm storage cases, ammunition magazines, holsters, spare parts for firearms and firearm cleaning equipment.

3. Documents of sex trafficking victims (anywhere the term victims is used in # 3 of this section denotes sex trafficking victims)

Documents which have what appears to be personal identifying information of victims and or any version of victims' names. such as: personal mail, checkbooks, personal identification, driver's licenses,  notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, loan bills, and vehicle registration, which documents can be connected to a victim or potential victim.

4. Seizure but not search of, Computers, Cellular Telephones, Tablets, Electronic and/or digital, magnetic and/or optical media and/or device(s) including but not limited to computer hard disc drive(s), computer network hardware, cassette(s), compact disc(s), flash card(s), zip drive(s), floppy diskette(s), CD-ROM(s), CD-RW(s), DVD-RW(s), DVD(s), compact disc(s), digital video disc(s), and/or device(s) capable  of creating, analyzing, displaying, converting, storing and/or transmitting electronic and/or digital, magnetic and/or optical impulses and/or data.

5. Hotel and travel documents

Documents establishing the renting, purchase or use of hotel/motel rooms and/or establishing  travel purchases such as: fuel receipts, hotel receipts, hotel booking information,

6. Narcotics

Illegal narcotics and/or any other controlled substance(s) and/or suspected illegal narcotics and/or any other suspected controlled substance(s) including, any drug or substance listed in Schedules I through V of the Controlled Substance Act or regulations adopted thereto.

7. Indicia of Control of the Hotel and Vehicles

Documents establishing the persons who have control, possession, custody or dominion over the property searched and from which evidence is seized, such as: mail addressed to a named occupant of the residence, checkbooks, personal identification, notes, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases, loan bills, and vehicle registration documents, providing such documents establish a connection between and individual and the property.

8. Condoms in bulk

9.      Any item(s) apparently used to restrain and/or control a person.  Any item(s) apparently used to facilitate the restraint and/or control of a person.

10.     Ledgers or other documentation showing suspected drug or human trafficking transactions.

11.     Large sums of U.S. currency.

12.     Large quantities of women's clothing, in particular lingerie and other apparel consistent with prostitution and sex trafficking photo shoots.

13.     Any suspected sex trafficking victims.

14.  All credit card or debit card processing machines.

15.  All hotel surveillance equipment and all closed circuit television equipment. Equipment used to capture events and people at the hotel.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

IN THE MATTER OF THE SEARCH OF
7640 Central Avenue SE, Rooms 105, 110, 112, 114 and 219, Albuquerque, New
Mexico 87108.

Described in Attachment A
Incorporated herein by reference

**AFFIDAVIT OF SPECIAL AGENT MORGAN LANGER**

I, Morgan Langer, being duly sworn, hereby declare and state as follows:

Your Affiant is a Special Agent with the Department of Homeland Security, Homeland
Security Investigations, hereafter referred to as HSI, and has been employed by HSI
(and all its previous incarnations) as such since June 1997. Your Affiant is currently
assigned to the HSI office in Albuquerque, NM where your Affiant is assigned to
investigate individuals involved in the trafficking of people including violations of Title 18,
United States Code, Section 1591 and 1592. Your Affiant has worked many human
trafficking investigations and has been trained in the investigation of human trafficking
cases by the Department of Homeland Security and other governmental and non-
governmental entities. During the investigation of these cases, your Affiant has
participated in the execution of search warrants and seized evidence of these violations.

Your Affiant successfully completed approximately twenty weeks of Immigration Officer
Basic Training at the Federal Law Enforcement Training Center (FLETC). Your Affiant
holds a Bachelor's Degree in Urban Studies from Rutgers University, and a Masters of
Arts Degree in Criminal Justice from Rutgers University.

This affidavit is made in support of an application for a warrant to search 7640 Central
Avenue SE, Rooms 105, 110, 112, 114 and 219, Albuquerque, New Mexico 87108, as
described in Attachment A, incorporated herein by reference, and to examine the items,
as more particularly described in Attachment B, incorporated herein by reference.

This affidavit is based upon information your Affiant has gained through investigation,
training and experience, as well as information from other law enforcement officers
whom your Affiant believes to be reliable. Since this affidavit is being submitted for the
limited purpose of securing a search warrant, your Affiant has not included each and
every fact known to him concerning this investigation. Your Affiant has set forth only the
facts that he believes are necessary to establish probable cause to believe

1

instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Section 1591 are located in 7640 Central Avenue SE, Rooms 105, 110, 112, 114 and 219, Albuquerque, New Mexico 87108, as more particularly described in Attachment A, incorporated herein by reference, and to examine items, as more particularly described in Attachment B, incorporated herein by reference.

**CURRENT INVESTIGATION**

1.      The Drug Enforcement Administration (DEA) was conducting a narcotics investigation involving individuals residing at the Best Choice Inn, located at 7640 Central Avenue SE, Albuquerque, New Mexico 87108.  During the course of DEA's Investigation, they discovered numerous females engaged in commercial sex acts who were residing at the hotel.  They also determined that in addition to a high volume of drug activity, the hotel was facilitating and profiting from the women's commercial sex work.  Upon uncovering this possible sex trafficking activity at the Best Choice Inn, the DEA contacted HSI for assistance in the sex trafficking part of the investigation.

**Ownership, management, and employees of the Best Choice Inn**

2.      Based DEA's research of law enforcement databases, the statements by sources of information as detailed below, and other subpoenaed documents, it is believed that Pregnashkumar "Pete" PATEL is the current owner of the Best Choice Inn. PATEL is also believed to have been the on-site manager of the Best Choice Inn from approximately October 2017 to March 2018. Public records from the New Mexico Secretary of State show Rakshaben "Rose" Patel, Pregnashkumar PATEL's mother, is the registered agent of Saishivam Lodging LLC.  "Om" PATEL's name is also listed on the LLC paperwork.  Saishivan Lodging LLC also owns the Rhodeway Inn, located at 1635 Candelaria Road NE, Albuquerque, New Mexico, as well as a motel in Montgomery, Alabama.  The Rhodeway Inn was documented as the principal place of business for Saishivam Lodging LLC.

3.      Your Affiant has received documents from the First State Bank in Scottsbluff, Nebraska, which is the mortgage holder for the Best Choice Inn. Per a review of the mortgage documents, the hotel was purchased by Rakshaben "Rose" Patel on or about October 6, 2017.  Rakshaben Patel and Pragneshkumar PATEL are both listed frequently in the loan documents and are both parties to Saishivam Lodging LLC.  The Loan Presentation Memorandum states that Pregnashkumar PATEL also uses the names "Pete" and "Om."  Within that document, it states that Pregnashkumar PATEL will move to Albuquerque and operate the hotel for his mother.

4.      Your Affiant conducted public record search through the New Mexico

2

Department of State and determined that Kamal BHULA is the registered agent of Omram LLC, as of February 16, 2018. Omram's principal place of business is listed as 7640 Central Avenue SE, Albuquerque, New Mexico, which is the address of the Best Choice Inn. BHULA has been the on-site manager of the Best Choice Inn since approximately March 2018, when it is believed PATEL purchased an additional hotel in Alabama, and relocated there to manage that hotel. BHULA has continued operations at the Best Choice Inn until the present.

5. On or about October 17, 2018, your Affiant obtained a list of employees from the New Mexico Department of Workforce Solutions for the Best Choice Inn Doing Business as (DBA) Omram LLC. On the list, there appears the names Kamal BHULA, Eddie HILL, Willie HORTON and Jonathan CRAFT. Furthermore, bank records obtained from Bank of America for account # 4390 0849 9132, show numerous payroll checks being paid to HILL, HORTON and CRAFT.

6. On April 8, 2019, Your Affiant requested additional earnings and withholding records from the New Mexico Department of Workforce Solutions. A review of the records showed the following employees receiving earnings from Saishivam Lodging LLC, which is the identified owner of the Best Choice Inn: Quarter 4 of 2017, Pragneshkumar PATEL earned $8,000; Quarter 1 of 2018, Willie HORTON earned $288; Quarter 1 of 2018, Pragneshkumar PATEL earned $3,000.

7. The following earnings records were attributed to Omram LLC, using the address of 7640 Central Avenue SE, Albuquerque, which is the address of the Best Choice Inn: Quarter 2 of 2018, Kamal BHULA earned $9,000; Quarter 2 of 2018, Jonathan CRAFT earned $1,062; Quarter 3 of 2018, Jonathan CRAFT earned $4,509; Quarter 4 of 2018, Jonathan CRAFT earned $2,664; Quarter 1 of 2018, Willie HORTON earned $1,368; Quarter 2 of 2018, Willie HORTON earned $4,451.50; Quarter 2 of 2018, Eddie HILL earned $576; Quarter 3 of 2018, Bmumika Bhula (wife of Kamal Bhula) earned $2,880; Quarter 3 of 2018, Willie HORTON earned $4,527; Quarter 3 of 2018, Eddie HILL earned $5,193; Quarter 4 of 2018, Bmumika Bhula earned $6,720; Quarter 4 of 2018, Willie HORTON earned $3,087; Quarter 4 of 2018, A.L. earned $2,880; Quarter 4 of 2018, B.L. earned $1,062.

8. As of October of 2018, Saishivam Lodging LLC was paying the mortgage for the Best Choice Inn.

## Sources of Information

9. On August 29, 2018, Your Affiant conducted an interview with a Source of Information (SOI 1) who has engaged in prostitution and exotic dancing. SOI 1 has an extensive knowledge of commercial sex work in Albuquerque. SOI 1 stated the following regarding the Best Choice Inn: there are approximately 15 prostitutes working at the Best Choice, both in the hotel and on the "track" (Your Affiant's Note: In my

3

training and experience, the "track" is a stretch of east Central Avenue in Albuquerque which is known for high rates of street based prostitution).  SOI 1 said they are controlled by approximately six males who appear to SOI 1 to be either dark skinned Cubans or African Americans.  SOI 1 said the male in charge of the operation is a dark-skinned Cuban in his 40s who has green eyes.  SOI 1 said some of the males may be from Memphis, Tennessee or Miami, Florida.  The prostitutes have a quota to meet each day and are locked out of their rooms until they meet and pay their quota.  The male controllers also provide the females with narcotics in exchange for their quota money.  SOI 1 stated the females are also provided with their rooms in exchange for the quota.

10.     On October 17, 2018, Your Affiant conducted an interview with an identified sex trafficking victim in another unrelated investigation.  The victim will be identified as P.M.  P.M. stated the following regarding the Best Choice Inn: "Rocky", who is of Indian descent, is the owner/manager of the hotel.  "Rocky" was later identified by law enforcement as Kamal BHULA.  He charges prostitutes $101.50 per night while all other customers are charged $51.50.  "Rocky" also enforces a $10 charge for all "johns" who go to the prostitutes' rooms (Your Affiant's Note: in my training and experience, a "john" is a sex worker's customer).  "Rocky" has at least two lookouts for "johns" that he employs.  P.M. identified the lookouts at African American males known as "Eddie Hill" and "Wayan."  Law enforcement suspects "Wayan" could also be the pronunciation for the initials "YN," and later identified this individual to be Johnathan CRAFT.  "Rocky" also alerts the prostitutes in the hotel if the police are looking for them and then hides them in the hotel office.  "Rocky" lives at the hotel with his wife and children.  They live in the room directly next to the office.  P.M. described the previous hotel manager as being another Indian named "Peter", who conducted the same type of business.  P.M. stated "Peter" left the hotel approximately seven to eight months prior to this interview.  P.M. said the other hotels along the "track" have banned the prostitutes from staying at them and the Best Choice is the only one that will rent to them.  P.M. said the hotel is "filled with prostitutes".

11.     On October 29, 2018, Your Affiant conducted an interview with another SOI (SOI 2), who stated that Willie HORTON is definitely employed at the Best Choice Inn and "Rocky" is his supervisor.  SOI 2 knows this because he/she is personal friends with HORTON and identified him from a photo that Your Affiant showed SOI 2.

12.     On January 18, 2019, Your Affiant met with another SOI (SOI 3) who stated that Willie HORTON resides at the hotel with his girlfriend, T.G.  SOI 3 said that HORTON and T.G. live in a room on the second story on the top right corner.  SOI 3 said that HORTON is a manager at the hotel.  SOI 3 was concerned that HORTON is sex trafficking T.G.  Your Affiant positively identified T.G. from her Facebook page, which is in her true name.  SOI 3 said that a narcotics dealer lives at the hotel and his

4

street name is "Big Man".  SOI 3 said that "Big Man" took money from SOI 3 because of illegal narcotics that he provided her.  "Big Man" extracted money and commercial sex acts from SOI 3 because of the alleged drug debt that she owed.  SOI 3 lived at the hotel for approximately the month of December 2018.  The room she lived in was registered under Jonathan CRAFT aka "YN" or "Wayan".  SOI 3 was charged more for her room than other sex worker tenants because she refused to engage in commercial sex acts with CRAFT.  While staying at the hotel, SOI 3 was performing sex work the entire time.  SOI 3 said a Middle Eastern male owns the hotel and she knew him by the name "Rocky".  SOI 3 was shown a photo of Kamal BHULA and confirmed that it was "Rocky".  SOI 3 stated that BHULA upcharges the sex workers' rooms by $10 to $15 per customer who visits the rooms and also charges "rent" on the rooms and if that "rent" is not met, the sex workers are locked out of their rooms.

13.     On January 28, 2019, Your Affiant met with another SOI (SOI 4).  SOI 4 has extensive knowledge of the Best Choice Inn and its operations.  During the meeting, she confirmed that Kamal BHULA is the owner/manager of the hotel, whom she knows as "Rocky".  She also confirmed that "YN" and/or "Wayan" and "Will" also work at the hotel, as do two sisters who are sex workers named B.L. and A.L.  The sisters receive a discount on their rooms for working at the hotel.  SOI 4 went on to say that she does not think "Will" still works at the hotel.  SOI 4 confirmed the $10 fee by "Rocky" and/or "YN" for visitors to the hotel rooms.  SOI 4 also confirmed that sex workers are locked out of their rooms if they do not meet their room "rent" and do not have access to their personal belongings until the "rent" is met.  The sex workers are then forced to perform commercial sex acts along east Central Avenue in Albuquerque or in customers' vehicles.  SOI 4 said she once personally witnesses "YN" physically abuse two sex workers who he accused of not paying the room visitor fees.  The physical abuse incident occurred approximately three months before this meeting.  "YN" struck the two sex workers with closed fists and kicked them.  The beating was so severe, that "YN"'s father, who is known as "OG" and also lives at the hotel, had to intervene to stop the beating.

14.     On March 8, 2019, Your Affiant met with SOI 4.  SOI 4 said that she frequents the Best Choice Inn and has a very good friend who had been living there and working in the office.  SOI 4 went to the Best Choice Inn approximately two weeks before this meeting and asked "Rocky" how much it would be to rent a room.  "Rocky" responded $57 per night.  SOI 4 informed "Rocky" that she would be "working out of it".  SOI 4 said that "Rocky" is the "top boss" at the hotel and has the power to hire and fire employees.  SOI 4 confirmed that visitors to the motel rooms are charged $10 per visit.  SOI 4 said that "YN" and "Will" act as lookouts for "Rocky" to identify visitors for "Rocky".  SOI 4 said that "Will" is still living at the hotel but does not work there anymore.  SOI 4 said that two sisters who are sex workers also work in the hotel office in exchange for room fees.  They are B.L. and A.L.  SOI 4 said B.L. was thrown out of her room by

"Rocky" approximately three to four days before this meeting because she owed money. SOI 4 stated at the time of the interview B.L. was locked out of her room and homeless. SOI 4 said the room number that B.L. was in was 216 or 217 and that her personal belongings were still in the room and she did not have access to them.  SOI 4 said that B.L. is extremely sick, possibly from using poisoned narcotics.  SOI 4 said that sex workers who are locked out of their rooms and do not meet the amount to regain access have their belongings collected by hotel employees and placed in a room on the top floor of the hotel on the far north side.  The items are then resold to other women who need them.  SOI 4 stated she herself had purchased items from that room.

15.     On May 24, 2019, HSI Task Force Officer (TFO) Bryan Covington conducted an interview with an SOI that will be referred to as SOI 5. SOI 5 has been a resident at the Best Choice Inn for approximately 18 months and works as a prostitute out of the hotel. (Note: The following are direct points from the interview TFO Covington conducted as well as his own training and experience.)

16.     SOI 5 stated that individuals at the Best Choice Inn operate in a way that exploits girls working in the commercial sex industry by taking portions of their money. If person hosts a date, or a commercial sex act, in their room at the Best Choice Inn she is then required to pay $10 to management and if the date comes after 10pm then they are required to pay $50 per date.

17.     SOI 5 stated that the following individuals enforce the exploitation at the hotel and/or work there: YN (Jonathan Craft), Rocky (Kamal Bhula), Big Man (Gregory Weightman), OG (James Eubanks), Ashley (Ashley Langston), and Will (Willie Horton). SOI 5 also referred to this group of individuals as "they" throughout the majority of the interview. TFO Covington clarified that when SOI 5 mentioned "they" she was referring to all or some of the above mentioned names.

18.     SOI 5 stated that the rent she is charged for her room is inflated. SOI 5 typically pays between $200-$300 per day for her room while those not engaged in prostitution pay a standard rate. If SOI 5 does not pay on time she is then charged late fees that are unreasonably high. SOI 5 referred to this as being bond by an unrealistic debt. If SOI 5 does not pay her daily room rate and late fees she is then locked out of her room until she can pay the required amount. During this time SOI 5 is denied access to her personal belongings in her room. SOI 5 knows her only option to earn the required amount of money is to work on the "track," or on Central Ave. working as a prostitute. SOI further advised that after an undetermined amount of time without paying their required fees the management at the hotel will seize their belongings and sell them out of the hotel. SOI 5 advised room 222 is where items are stored and room 115 is where items are sold.

19.     SOI 5 stated that due to the recent New Mexico State Police (NMSP) surge in the Southeast portion of Albuquerque "they," referring to Craft, Horton, Weightman, and Langston, are requiring the prostitutes to stay in their room. The

prostitutes are then required to have dates come to their room only. SOI 5 stated that the reason for this requirement is so the prostitutes do not get stopped and/or arrested by NMSP.

20.     SOI 5 advised that "johns," or those looking to purchase commercial sex, know that there prostitutes who frequent the Best Choice Inn. SOI 5 added that if a "john" comes to the hotel seeking to purchase sex then Craft will arrange a date for them. Craft will ask what the "john" is looking for then he will see which female is available and direct the "john" to that specific female's room.

21.     TFO Covington asked SOI 5 if uniform police officers frequent the Best Choice Inn often in which she advised they did. SOI 5 also stated that if law enforcement come to the hotel then she and others in the hotel are notified. TFO Covington asked SOI 5 how she and others are notified in which she reported that the landline phone in their hotel room will ring with a certain ringtone. The ringtone is one that only sounds when someone from the office calls. SOI 5 added that the only time someone from the office calls is when police are present on the premises.

**DEA Investigation**

22.     On October 31, 2018, Your Affiant conducted an interview with the DEA undercover agent (UCA) who has participated in a number of undercover operations at the Best Choice Inn.  The UCA identified Kamal BHULA as the authority figure at the location with Jonathan CRAFT, aka "Wayan"/"YN", as his number two figure or lieutenant.  The UCA also is familiar with Willie HORTON, and knows him as a trafficker who operates from the motel and was residing at the motel as of October 2018.  The UCA relayed the following information:

23.     On August 17, 2018, the UCA met with a female who identified herself as "Armani".  Your Affiant has since positively identified "Armani" as sex trafficking victim P.M. who was referenced earlier in the affidavit.  P.M. stated that she pays the rent to her room to Kamal BHULA AKA "Rocky" and that she and other sex workers are charged $10 extra by BHULA and other employees for each customer who visits their rooms for the purpose of commercial sex acts.

24.     On that same day, the UCA was introduced to "Rocky" by "Armani" (P.M.).  While in the presence of the UCA, "Armani" asked "Rocky" what amount of money she owed on her room.  "Rocky" consulted several documents which were located in the management office where this meeting took place.  After consulting the documents, "Rocky" informed "Armani" that she owed approximately $81 for the room debt.  The UCA then paid "Rocky" $100 and informed him that he would be returning to the Best Choice Inn and paying future room debts.  On August 31, 2018, The UCA paid "Rocky" $150 to cover "Armani's" room debt, which was calculated to be $104 by "Rocky".  "Rocky" explained to the UCA that late charges are assigned to rooms depending upon when tenants paid their rent.  The UCA confirmed with "Rocky" that "Armani" is charged

7

a fee per visitor to her room.  The UCA explained to "Rocky" that he did not want "Armani" charged for his visits.  "Rocky" recorded the UCA's undercover name in "Armani's" room ledger and said "Armani" would not be charged for future visits from the UCA.  "Rocky" said room rent was due by 11:00am each day.  "Rocky" went on to explain that if visitors were in "Armani's" room for an extended time period, then they would be charged.  "Rocky" said they can only charge when they see the visitors. During this interaction, "Rocky" was in the management office.  The UCA observed the documents referenced were kept in the office.

25.     On September 12, 2018, the UCA was informed by "Armani" that she had been "kicked out" of her room at the Best Choice Inn due to being behind on her rent. The UCA spoke with "Rocky" and inquired as to how much money "Armani" owed on her room.  "Rocky" again checked some ledgers and told the UCA that she owed $102. The UCA observed several $10 bills attached to the room ledgers with paper clips, including to "Armani's" room ledger.  The UCA paid "Rocky" $150 for "Armani's" debt. "Rocky" stated that "Armani" would owe $13.50 for the following day, due by noon.  The UCA asked "Rocky" if that amount stays the same if "Armani" does not have any "dates" before noon.  "Rocky" applied in the affirmative and further explained that "we try to help the girls" and that short visits or visits that are not observed are not charged.  However, extended visits, such as one to two hours, would be charged the fee.  "Rocky" also confirmed that the charge is $10.  The UCA observed the ledgers referenced were kept in the management office.

26.     On February 6, 2019, the UCA rented room 204 at the Best Choice Inn. While speaking with BHULA in the management office of the Best Choice Inn, BHULA told the UCA that that room was next door to "Will's" room and that it would be noisy because "Will" receives frequent visitors to his room.  (Your Affiant's Note:  "Will" has been previously identified as Willie HORTON).  The UCA observed numerous substandard conditions in room 204, to include large holes in the bathroom door, a sprinkler attached to the wall via duct tape, a missing dresser drawer, broken fixtures on the wall, torn curtains, a plugged peep hole on the door and badly stained carpet.  While standing outside room 204, the UCA observed vehicles arriving in the hotel parking lot and female tenants of the hotel exiting from rooms to the meet the drivers of the vehicles.  In several instances, the female tenants entered the vehicles and departed the property.

27.     At one point, the UCA observed a female walk into the parking lot of the hotel from Central Avenue.  The female walked to the hotel office window at the same time as the UCA.  The female rang a doorbell and BHULA appeared.  The female asked BHULA how much money she owed and then began to count of several $20 bills (the UCA could not hear BHULA's responses).  The female asked BHULA if she was still locked out of her room and if her belongings were still in the room.  BHULA, aka

8

"Rocky" appeared to answer her question, but his specific response was not heard by the UCA. The UCA observed "Rocky" to be in the management office during this interaction.

28.     On March 4, 2019, the UCA spoke with a female who identified herself by her first name beginning with the letter A, and who was working in the hotel office. Your Affiant later showed the UCA a photo of A.L., who is a known sex worker, and the UCA said that is the same female who was working in the office on March 4, 2019. The UCA requested room 204 to rent for a week and A.L. responded that BHULA has a rule that rooms 201 to 207 cannot be rented for more than three nights at a time. The UCA rented the room for three nights. A.L. went on to explain that BHULA has moved out of the hotel and now lives in a house and only works at the hotel from 6:00am until 2:00pm.

29.     When the UCA approached room 204, the UCA observed a sign posted on the outside of each room door stating that if any money was owed at checkout time (11:00am) or if the tenant was late in paying additional rent, the items in the hotel room would be confiscated by the hotel and disposed of. The UCA also observed the same activity as before of females exiting hotel rooms and entering vehicles which had pulled into the hotel parking lot. Several females then departed the property in the vehicles.

30.     On March 5, 2019, the UCA entered the hotel office and observed a stack of room ledgers on the counter. Several of the ledgers had U.S. currency attached to them and there was also a large pile of various denominations of U.S. currency. BHULA told the UCA that he was now renting a house in the Northeast Heights section of Albuquerque and worked at the hotel from 6:00am until 2:00pm daily. BHULA said he moved from the hotel in order to keep his family (his wife and small child) away from the violence and the unpleasant people in and around the hotel. BHULA said that if he was not physically at the hotel, then "YN" is in charge. (Your Affiant Note: "YN" has been previously identified as Jonathan CRAFT by the UCA and several SOIs). Later that day, BHULA explained that he does not rent rooms 201 to 207 for extended periods because he wanted to keep the "riff-raff" away from the hotel office area.

31.     BHULA then called CRAFT to the office to meet the UCA. The UCA told BHULA and CRAFT that he expected several visitors and CRAFT pointed to a sign taped to the office window which stated that each visitor to a hotel room would incur a charge. CRAFT then went on to explain that if the UCA paid $20 that would satisfy the visitor upcharge for that day. The UCA attempted to hand CRAFT a $20 bill but CRAFT pointed to BHULA and said "pay him." The UCA then gave the $20 bill to BHULA. Later, after CRAFT had left, BHULA returned the $20 bill to the UCA and explained that the UCA would not have to pay the visitor upcharge even though other guests of the hotel did have to pay. Later that day, CRAFT explained to the UCA that he was always

9

present at the hotel and it was his responsibility to maintain order and monitor activities at the hotel.

32.     On March 6, 2019, the UCA observed CRAFT arrive at the hotel in a black Mercedes.  CRAFT then went to a room on the second floor of the hotel that the UCA could not identify.  CRAFT was in the room for a period of time and then exited.  After exiting, CRAFT yelled to the UCA that he should call him and that his telephone number is 505-717-9828.

33.     On March 8, 2019, the UCA asked BHULA if it would be acceptable if a "girl" could use his room when he was not present.  BHULA said it was permissible as long as BHULA knew who she was and had her name on the UCA's room ledger.  The UCA said the "girl" would likely have several visitors and she would be "taking care of business".  The UCA asked BHULA if he could pay her visitor fees and BHULA responded "yes".  The UCA asked if CRAFT kept track of visitors (for paying fees) and BHULA responded "yes" again.  This interaction when BHULA was in or near the management office.

### Calls for service to the Best Choice Inn

20.     On April 9, 2019, Your Affiant received an analysis of calls for service from the Albuquerque Police Department at the Best Choice Inn.  In 2017, there were 131 total calls for service, in 2018 there were 125 calls for service.  From January 2019 to March 2019, there were 17 calls for service.  Several times in 2018, responding officers made contact with the management at the Best Choice Inn.  While the managers were not always readily identified in the reports, responding officers did document contact with BHULA, HORTON, and PATEL's suspected wife.

34.     On May 6, 2019, Your Affiant was notified by DEA Task Force Officer (TFO) Matt Hoisington that the Albuquerque Police Department (APD) received a call for service at the Best Choice Inn.  The call came in on May 5, 2019 and APD was dispatched to the Best Choice Inn on May 5, 2019.  The nature of the call was a 911 call saying that all the females at the hotel were being drugged and forced into sex trafficking.

35.     APD Police Officer Franco was dispatched and he made contact with Kamal BHULA at the front desk.  Officer Franco requested a list of all currently occupied rooms by females.  BHULA provided him with a list of fifteen rooms.  BHULA told the officer that he only had 22 guests the night prior.  It is observed in lapel video that BHULA is referencing a computer in the management office as he is assisting Officer Franco.

10

36.    The officer proceeded to knock on every door of the hotel and found an additional eleven rooms were occupied which BHULA had not disclosed. The officer was able to identify sixteen subjects in the rooms, eight of which had active state arrest warrants, two of the warrants were for felonies. In his training and experience, the officer believed that the hotel is used primarily for narcotics dealing and prostitution. He also estimated that almost the entire hotel was occupied, despite BHULA's report of only having 22 guests. In his training and experience, the officer believed the majority of the females that he encountered were either under the influence of narcotics and/or had males in the rooms with them who they could not immediately identify, as is consistent with sex work. While the officer was knocking on the room doors, he observed two males exit their rooms at the hotel and sit in cars, observing the officer as he conducted his welfare checks. In his training and experience, the officer believes that the males were conducting counter surveillance. The officer was not able to make contact with several occupied rooms as the individuals inside would not answer the door.

37.    Room 114 appeared to have a kicked in door. The officer made entry to room 114 as he was concerned about the welfare of anyone inside. There were no occupants of the room and the door was kicked in. The officer entered the room and observed a large amount of lingerie, perfume and makeup products. Room 114 had been occupied by Ashleigh Langston as she stated that to the officer during their encounter in the hotel office. Additionally, another guest of the hotel stated that room 114 is occupied by the female who works in the office. The officer encountered a female in room 216 and she had a visible bleeding puncture wound in her wrist consistent with intravenous narcotics use and there was a needle cap on the floor near her foot.

38.    The following is an analysis of the room occupants that the aforementioned officer encountered at the Best Choice Inn on May 5,2019 and information regarding the occupants of the rooms gathered by Your Affiant.

   Room 118 – F.G., year of birth 1981. Multiple arrests for narcotics violations, auto burglary and robbery.

   Room 110 – B.S., year of birth 1960.

   Room 114 – A.L., year of birth 1987. A.L. is previously identified by Your Affiant in this warrant as a known sex worker (according to SOI 4) and working in the hotel office (by SOIs 2 and 4). A.L. has arrests for stolen vehicle offenses and lists the hotel as her address on her driver's license.

   Room 107 – X.A., year of birth 1989. Arrests for narcotics violations, stolen vehicle offenses, fleeing a law enforcement officer, battery, criminal damage to property, providing alcohol to minors and contributing to the delinquency of a minor.

   Room 107 – Alex Eckford, year of birth 1949. Arrests for larceny, resisting

arrest, auto theft, burglary, robbery, criminal sexual penetration, credit card fraud, forgery, embezzlement and narcotics violations.

Room 108 – C.B., year of birth 1971.

Room 120 – J.H., year of birth 1993.  Arrests for breaking and entering and resisting arrest.

Room 122– S.A., year of birth 1985.  Arrest for narcotics violations.

Room 122 – S.A., year of birth 1987.  Arrests for assault and promoting prostitution.

Room 116 – A.M., year of birth 1992.  Arrests for narcotics violations, stolen vehicle offenses, and aggravated assault.  Your Affiant had previously identified A.M. as a possible sex trafficking victim in the Adonis BAKER investigation, which is ongoing.  BAKER and other co-conspirators have been indicted in federal court for sex trafficking and other related charges.

Room 116 – B.N., year of birth 1983.  Arrests for stolen vehicle violations, narcotics violations, prostitution, battery, harassment, resisting arrest, kidnapping, bribery of a witness, felon in possession of a firearm, stolen property offenses, breaking and entering, robbery, larceny and abuse of a child.

Room number unknown (possibly room 216) – M.E., year of birth 1986.  Arrests for robbery, stolen vehicle offenses, concealing identity, narcotics offenses and shoplifting.

Room 221 – Jonathan Guion, year of birth 1978.  Arrests for theft, assault, sexual assault, resisting arrest, indecent exposure and narcotics offenses.

Room 225 – V.S., year of birth 1973.  Arrests for shoplifting, forgery, prostitution, narcotics offense and resisting arrest.

Room 118 – R.L., year of birth 1992.  Arrests for narcotics offenses, resisting arrest, stolen vehicle offenses, tampering with evidence, stolen property offenses, prostitution.

On February 6, 2019, Your Affiant and other law enforcement officers conducted a human trafficking outcall operation.  (Your Affiant Note:  an outcall operation is when potential sex trafficking victims are lured to a law enforcement controlled location, usually a hotel, and offered assistance and debriefed for information on potential traffickers).  During this particular operation, a sex worker was brought to the law enforcement controlled location.  The sex worker, identified for the purpose of this affidavit as A.T., said that a sex trafficked female named [R.] walks the "track" in Albuquerque.  She said [R.] has a little white dog who she walks with, is heavy set, and is light-complected with glasses.  [R.] is being trafficked by her boyfriend, possibly out of the Best Choice Inn in Albuquerque.  APD Detective Anderson was questioned about [R.] and he produced a photo of R.L., date of birth 05/28/1992.  A.T. was shown the photo and confirmed that is the female she was reporting.

## On line reviews of the Best Choice Inn

39.     On February 27, 2019, Your Affiant conducted an online Google search of the Best Choice Inn seeking reviews of the hotel.  Your Affiant located the following Google reviews, which are a collection of reviews from other sites, such as Expedia, Trip Advisor, Yelp and others.  The following reviews are available online for public consumption:



**Mr. Grumpy**                                                                                1/5
a month ago on G Google

I visit a friend who happens to stay there on three different occasions. every time i visited there where shots that rang out 1. from the top floor walkway 2. from a guy chasing another through the parking lot shooting carelessly at him 3. from a room to a vehicle hitting a man in the leg, where his friends picked him up and carried him to a car and sped off. The worse part was the police did not come in any of these shootings. The place is full of drug dealers and users and hookers, good luck not getting poked by a use needle left in the rooms!

 Like



**Dionna Dominguez**                                                                       1/5
7 months ago on G Google

Super weird and sketchy people there, you can see people getting high on the stairs, and there is NO security.. There's almost always a fight going on in the parking lot, and when I went there my last time with my 3 year old son to visit our relative, we were stuck there from around 9:00 P.M to 3:00 A.M. because there were police blocking the entire entrance and exit because someone got their room raided for drugs.. Its a SUPER ghetto place, if anyone should come here and you have children, DON'T BRING YOUR KIDS.. It's so unsafe and also very unsanitary.. There are used needles just thrown all over the parking lot and the stairs, and no security. Also, the staff are really hateful.. So yeah, I really really don't recommend this ghetto, sketchy and unsanitary motel to anybody.

 Like



**Joe Savage**                                                                              3/5
a year ago on G Google

Place is 260 a week and not very friendly or not very good spot ... Lots of drug adicts and prostitution going on

 2



**Expedia reviewer**                                                                        1.0/5.0
6 months ago on ● Expedia.com

Horrible place to stay the staff was terible and rude. Alot of prostitutes around the area and the staff was trying to captiize on this by charging the prostitutes more. Also encouraging more prostitutes to stay and work. So many ...
Read more on Expedia.com

13



**Jennifer Tidwell**                                                    1/5
11 months ago on G Google

DO NOT go here, unless of course you're looking for a prostitute and/or a drug dealer.
I have NEVER been more terrified in my life than when I went here to check in with my
3 children!!  I did NOT stay!  NOT FAMILY FRIENDLY!

👍 3

**Robby Line**                                                         1/5
8 months ago on G Google

It wasn't very nice.prostitution rapid. Drugs in the pstways. Police are ever where. I'll
never stat there again.

**Georgie Gurule**                                                     1/5
11 months ago on G Google

Disgusting, roaches the manager is a hustler and will charge you ten dollars just to visit
someone on the property. Random drug addicts everywhere not that I hate them. But
it's a very dangerous place for those who are not from there or don't know what their in
for.

👍 1

**Kyle Cochran**                                                       2/5
5 months ago on G Google

Not a very good Motel to stay in and I did not enjoy it druggies all around

👍 Like

**Dakota Miller**                                                      3/5
a year ago on G Google

Alot of drug traffickers. Homelessness is also a problem.

👍 Like

14



**Randy Werito**    1/5
2 years ago on G Google

Homophobic and Prejudice!
I will never stay there again! I checked in and a couple of hours later the security guard
knocks on the next door room door to tell the neighbors that their is a "F%$(%n F@G!"
next door to them! As the night goes on, a friend who was staying with me came back
from seeing a another friend. We were than told to leave because they saw people
climbing the fence to the property... Mind you, that earlier our neighbors got bitched at
for cheating someone for drugs... Really??? Explain this???

I called the next day for a refund, and got hung up on!!

How PROFESSIONAL!!!

NOT EVEN WORTH A STAR!!!!

👍 1

**Alexei Pears**    1/5
8 months ago on G Google

Drug infested dump.

👍 Like

**Irene Jaramillo**    5/5
11 months ago on G Google

Great prices on spices!!

👍 Like

**Alexis Baros**    1/5
10 months ago on G Google

Alot of drugs and prostitution

👍 Like

**Eduardo Ruiz**    5/5
11 months ago on G Google

Dope House Records ;)

## Review of P.M.'s cellular phone

40.    On October 5, 2018, HSI Task Force Officer (TFO) Bryan Covington
seized a black Cricket cellular telephone that was in the possession of a sex trafficking
victim previously identified in this affidavit as "Armani," or P.M..  TFO Covington
obtained a federal search warrant for the cellular telephone and the telephone was

15

searched on December 14, 2018. The following pertinent text messages were located: (Your Affiant's Note: The following are direct copies of the text messaging with interpretations by TFO Covington based on his training and experience. Note that TFO Covington, and not this affiant, is referring to his own training and experience when stated below. However, this affiant agrees with TFO Covington's interpretations of the text messages.)

    41.    On 7/21/18, phone number 505-228-1885, text P.M. the following:

> "What's your rates"
> P.M.: "80 qv 120 hh 150 full hr"
> "What part of town"
> P.M. : "7640 central ave se abq nm 87018"
> "Ok too much 5,0 there"

Based upon my training and experience this conversation is in reference to an individual contacting P.M. in order to arrange a commercial sex act. P.M. provides her prices which would be $80 for a quick visit (approximately 15 mins), $120 for a half hour, and $150 for a full hour. P.M. also informs the person that she is located at 7640 Central Ave., which is the Best Choice Inn. The person responded mentioning there are too many "5,0" there which commonly is a reference to police.

    35.    On 08/09/2018, P.M. texts "Wyann" (Jonathan CRAFT) at 505-717-9828, and said:

> "Im so sorry boo i just stRted getting blown up and i am in debt 400$"
> "Im so sorry i feel horrible we can stikl do our thang but gota b kinda fast"

Based upon these messages it appears P.M. is in debt of some sort.

    36.    On 8/20/2018, P.M. texts CRAFT and says:

> P.M. "I really want to get a different room i cant fucking do this anymore"
> CRAFT " Ok I got u"
> P.M. "Im getting kicked out i gave Gaige the money to pay my room this morning he has never done something like this"
> P.M. "I dont want any drama rocky is going to kick me out of the hotel if i ask for a new room he told me hes tired of the drama"
> CRAFT "Ok just stay I that room til tomorrow and I'll have u moved"
> P.M. "Ok cool"

P.M. "Idk what rocckies talking about im never in the mix and i dont even tell anyone wats going on"

CRAFT "He deals with everyone drama bae"

P.M. "I know I dont want to end up in sarah and lyndsys situation because i cant stay in any of these hotels on central so im just going to ignore this fool and make money the last thing i want is to end up homeless for sum dum shit"

P.M. "Thankyou for everything i promise ill pay u for rent asap"

This conversation confirms that CRAFT is in some sort of manager position at the hotel, and has the ability to collect dues for residing at the hotel and the ability to change people's rooms if needed.

37.    On 8/21/2018, P.M. sends a text to CRAFT:

P.M. "Your working thr hotel tonight"
CRAFT "Yes"
CRAFT "Dude dont have any $$..."

Once more, CRAFT is known to work the hotel in a managerial position.

38.    On 8/21/2018, phone number 505-435-7972 discusses with P.M. about coming to meet her for a "date." The following conversation occurs:

P.M. "R u sure your coming"
Other "Sorry it's not you I pulled up and I don't like the feel of that hotel in my car will get broken into"
P.M. "No it wont all those guys r security"
P.M. ":they are watching the vehicles 24 7 ican even sneak anyone in without getting charge 10$ they are always watching"

Based upon this conversation and my knowledge of this case, all "dates" are required to pay a visitor's fee, usually $10. P.M. also mentions that the "security" guys are always watching. This is common at the Best Choice Inn. The individuals, such as Craft, who works for Rocky, are continuously watching the parking lot ensuring they receive cuts from the earnings the girls make.

39.    On 8/21/2018, the DEA UCA messages P.M.:

UCA "Hey girl how are u"
P.M. "Not very good how are u"
P.M. "I dont have my rent im getting kicked out n im sick I got 800$ stolen from me im fucked"

17

> UCA "Im sorry girl. I had to go to colorado to help my bro with some of that
> other work i told u about. Do u have a place 2 stay? When i get back i can
> chat with rocky.
> P.M. "Besides that whats up u ok did u need anything"
> P.M. "Ok thanku"
> UCA "Are u staying someplace else? U ok?"
> UCA "Girl u ok?
> P.M. "No im just sitting outside"
> UCA "Girl im sorry"
> UCA "Call?"
> UCA "And who stole it?"
> P.M. "Just a fuckin trick i didnt call"

Based upon this conversation and upon my interaction with the UCA, I know that
P.M. had money stolen from her and was unable to pay the inflated rate that she was
being charged to stay at the hotel.

40.      On 8/22/2018, P.M. texts CRAFT:

> P.M. "Im doing adate and then illb down to pay u"
> P.M. "If your outside and u see sabrina or freddy going tomy door tell them
> no im working"
> P.M. "Fuck im sorry i didnt mean to send that im sorry babe everyone has
> fucking bounced out im going to walk right now i promise i got u"
> P.M. "Ive hsd 2 dates just come and they didnt want to pull into the hotel
> because their fucking scared bitched omg im gettting frustrated are you ok
> love is that you yelling outside?"
> P.M. "I reallyneed some clear"

Based upon my knowledge of this case, I know that P.M. is required to pay
CRAFT an inflated amount of money for rent at the hotel. P.M. expresses her concern
of not having enough "dates" and says she is "going to walk." When those engaging in
commercial sex at the hotel are not able to pay the proper amount of money they are
forced to go "walk the track." Also, P.M. telling CRAFT that she needs "clear" shows that
Craft has the capability of obtaining methamphetamine.

41.      On 8/22/2018, P.M. texted 505-592-8100 who is saved in her phone as
OG. OG was identified by SOI 4 as "YN's" or "Wayan's" father.  Law enforcement has
identified OG as James Eubanks. The following conversation takes place:

> P.M. " Honestly i missed that date last night the cueban that your son was
> talking about drove out of the parking lot wwhen i was walking up im sorry

babe i should have told u i waz in hurry its my fault but im going to have the money very soon please dont b mad im sick so trustme im going to make tha cash asap promise!"
P.M. "Hey babe can i go see you please i have some money for you"

Based upon my knowledge of this case I know that Eubanks is also one that collects money at the hotel from prostitutes who owe inflated rates.

42.    On 08/22/2018, the UCA checks in with P.M. and the following conversation takes place:

UCA "Hey girl u back in ur room?
P.M. "Nope im locked out im so behind but im working my ass today im not staying outside again ill fucking die"

Based upon the information gained by agents and the UCA, P.M. is locked out of her hotel room due to her not making enough money to pay the inflated rates placed on her. P.M. is working the track trying to earn enough money to get back into her room where her belongings are. The hotel management will not allow P.M. to access her belongings until she earns enough money.

43.    On 8/23/2018, P.M. receives a message from 505-261-3225 and the following conversation takes place:

Other "I'm getting my dick sucked you wanna go next?"
P.M. "Yeah"
Other "Cool I'll be finished in 30 min let me know when your ready"
P.M. "Im ready"
Other "Ok I'm almost finished where am I picking you up"
P.M. "On central and charlestonn im getting kicked out of my hotelcan i do anytbung extra for you i need to mak00 $"
P.M. "100$ or at least 80$ if ilose my hotel im goibv to be so fucked im going to loseall of my stuff"

Based upon this conversation I know P.M. was close to having her belongings seized by the hotel and not being allowed to have them back. A male subject is soliciting P.M. for sex. She is very adamant that if she does not make enough she will be kicked out of the hotel and even offers to do extra sex acts for more money so she can stay in her hotel.

44.    On 8/23/2018, P.M. texts Jonathan CRAFT, aka "YN" or "Wayan."

19

> P.M. "Is thrre anyway you can sell me a little bit of weed i have like 3 dollars"

Again, this shows that CRAFT is a main target when it comes to the trafficking of narcotics.

45.     On 8/25/2018, P.M. texts a female whom agents identified as SOI 4 and says:

> P.M. "I can't wills being a little bitch he said until we pay our room that if he see me un anyone elses room hebis goingbto charge them 30 bucks"

Based upon my knowledge of this case, Will is identified as Willie HORTON. HORTON is also a manager at the hotel. This is an example of the managers charging inflated fees for the ones who engage in commercial sex.

46.     On 8/26/2018, the UCA texts P.M.:

> UCA "Hey girl im back when u wan 2…Get together?"
> P.M. "Any time im all sick and im lockdd out my woom im. Havi g Rough week"
> UCA "Dam girl im sorry r u ok? Can i take care of this with rocky? What do u owe?"
> P.M. "I owe 200 im about to get kicked out of her if my debt gets Ny higher"
> UCA "Ok girl lemme see what i can do"
> P.M. "Ok u are very sweet im out making money now idk why things are going so fucken shity lately i am always ahead"

Based upon this conversation and upon the knowledge of the UCA, it is known that P.M. was locked out of her room for approximately 3 days. This was due to her not having enough money from dates to pay the inflated rate that was being charged specifically to her. During this time P.M. was not allowed to access her room or any of her personal belongings.

47.     On 8/28/2018, P.M. texts CRAFT:

> "I'm not blowing u off or buying from anyone else I'm not doing good at all I owe you I owe your dad I owe everyone I'm barely making rent and trying to make money but I'm not feeling good I get the feeling u think I'm just ignoring u or taking advantage but no I'm just embarrassed I hate owing ppl money"

Based upon this message to C it appears that P.M. sees CRAFT as a sole source of narcotics and that she feels the need to report to CRAFT regarding rent and owing people money.  This further shows that CRAFT is one of the individuals who collects rent and also sells narcotics.

48.     On 8/28/2018, P.M. is texting with 505-588-8426 regarding meeting for commercial sex:

> Other "I'm here"
> P.M. "224"
> P.M. "Hello baby r u coming up"
> P.M. "What happened"
> Other "Is a cop outside"
> P.M. "No wtf"
> Other "Yes"
> P.M. "Ok well he ain't out their for me"
> P.M. "I pay extra here just for that exact reason they can't mess with me or my visitors but whatever works for you"
> P.M. "I never saw a cop and I still don't see one r u sure you at the correct room best choice inn"
> P.M. "Central and charleston"

Based upon this conversation the person meeting P.M. for commercial sex was made nervous by police presence at the hotel, which is very common.  Also, P.M. makes a point that since she pays an additional fee that police do not mess with her or her clients. This coincides with information previously received that, for an additional fee, management will give false information to police to protect those in the motel.

49.     On 9/7/2018, CRAFT and P.M. communicate via text message:

> CRAFT: "Are you ready"
> CRAFT: "U played me"
> P.M.: "I'm no I didn't u know how fucken exhausted I was"
> CRAFT: "Well can I come get in u now"
> P.M.: "Come on"

Based upon this conversation it appears that CRAFT was wanting to meet P.M. for sex.

50.     On 9/14/2018, the UCA texts P.M.:
> UCA: "How are you feeling?"
> P.M.: "I'm locked out of room I feel horrible"

UCA "Im talking with rocky to try to fix this"
P.M:. "You talked to Rocky??"
UCA: "Yes im trying to work it out"
P.M:. "Any luck"

## INTERSTATE NEXUS

The hotel is owned by Rakshaben PATEL and Pragneshkumar PATEL, who after managing the hotel himself for approximately 5 months, currently resides in Alabama. Additionally, Pragneshkumar PATEL is a registered agent of Saishivam LLC, which is currently incorporated in Alabama. This information was obtained from the Alabama Secretary of State and commercial database record checks.

Many of the sex workers in the hotel utilize the Internet to advertise their services. Several of the SOIs have admitted to using the Internet for sex work while they were staying at the hotel, in particular SOI 3.

The LLC currently operating the hotel, Omram, utilizes Bank of America for its banking, which has branches and offices throughout the U.S. This information was obtained through financial database checks and bank records obtained through subpoena.

The hotel itself operates in interstate commerce by servicing interstate customers, and depositing money into Bank of America, which also operates in interstate commerce.

## FEDERAL CHARGES RELATED TO THIS INVESTIGATION

On June 12, 2019, a federal Grand Jury sitting in Albuquerque, in the District of New Mexico, handed down a ten-count indictment (Criminal No. 19-CR-1631) against the following individuals and corporation:

KAMAL BHULA, a.k.a "Rocky," JONATHON CRAFT, a.k.a "Jonathon Craft," a.k.a "YN," a.k.a "Wayan," WILLIE HORTON, and OMRAM, LLC

The persons and corporation charged in the indictment, and the offenses for which they have been charged, include the following:

Count 1: 18 U.S.C. § 1594(c): Conspiracy
Counts 2-4: 18 U.S.C. §§ 1591(a)(1) and (b)(1): Sex Trafficking by Means of Force, Fraud, and Coercion; 18 U.S.C. § 2: Aiding and Abetting;

22

Count 5: 18 U.S.C. § §1592(a)(1) and (b)(1): Benefitting Financially from a Sex Trafficking Venture; 18 U.S.C. § 2: Aiding and Abetting;
Count 6: 18 U.S.C. § 1952(a)(3)(A): Interstate and foreign Travel and Transportation in Aid of Racketeering enterprises; 18 U.S.C. Aiding and Abetting;
Count 7: 21 U.S.C. § Conspiracy;
Count 8: 21 U.S.C. § 856(a): Maintaining a Drug-Involved Premises; 18 U.S.C. § 2: Aiding and Abetting;
Count 9: 21 U.S.C. § 860(a): Maintaining a Drug-Involved Premises Within 1,000 Feet of a School; 18 U.S.C. § 2: Aiding and Abetting;
Count 10: 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering.

Federal arrest warrants have issued resulting from the indictment.

## ARREST AND INTERVIEW OF KAMAL BHULA

On June 18, 2019, agents arrested BHULA pursuant to an arrest warrant issued with the indictment. BHULA was advised of his rights pursuant to *Miranda*, waived those rights, and agreed to speak with agents.

According to BHULA, the following individuals currently reside in the following rooms at the Best Choice Inn:

| NAME | ROOM |
|------|------|
| Willie HORTON | 110 |
| Johnathan CRAFT | 112 |
| Eddie HILL | 219 |
| Larry WOOLRIDGE | 116 |
| Ashley LANGSTON | 114 |
| Gregory WEIGHTMAN | 105 |
| Brianna LANGSTON | 224 |

BHULA further stated that HORTON has been renting room 110 since June 17, 2019 and has also been renting room 210 but checked out of that room on June 17, 2019. Johnathan CRAFT has been renting room 112 for six months or more. Eddie HILL has been renting room 219 for the last two weeks at least. HILL is previously named in this affidavit as being one of BHULA's lookouts at the hotel and Your Affiant has located payroll records for the hotel both from the New Mexico Department of Workforce Solutions and the hotel's Bank of America accounts. Ashley Langston, previously identified as A.L. in this affidavit, has been identified by SOI 4 as an employee of the hotel and a known sex worker, as has her sister, Brianna. Additionally, a victim, A.S., was previously referenced in this affidavit as stating that Ashley Langston is employed at the hotel and performs many of the same duties as CRAFT and HORTON. Your

Affiant has located payroll records from the New Mexico Department of Workforce Solutions confirming Ashley Langston's employment at the hotel.  Gregory WEIGHTMAN, who is also known as "Big Man", has also been identified by SOIs 3 and 5 as performing many of the same duties as CRAFT and HORTON.  Also, WEIGHTMAN is currently on conditions of release for federal narcotics charges.

In Your Affiant's training and experience, individuals engaged in sex trafficking often store evidence of their illegal activities in their rooms/residences, to include documents, U.S. currency, firearms, narcotics, electronic devices, hotel room keys, sex trafficking victim information and other evidence.

## V. CONCLUSION

Based upon the information contained herein, your Affiant states that probable cause exists to believe that instrumentalities, fruits, and/or evidence of violations of Title 18, United States Code, Sections 1591 is located on the following residential premise: 7640 Central Avenue SE, Rooms 105, 110, 112, 114 and 219, Albuquerque, New Mexico 87108.  Specifically, the Best Choice Inn appears to be engaged in sex trafficking by renting their rooms at an inflated rate to prostitutes, and levying a $10 charge based on each john they service.  This rate is sanctioned and enforced not only by BHULA, but by at least two people on his payroll, CRAFT and HORTON.  If the women do not make their fees, they are locked out of their rooms and forced to walk the track until they make enough money to get back into their rooms.  There is also evidence that management is partaking in dispensing these women narcotics, and that physical violence is being perpetrated on the women.

Based on observation by law enforcement, there is probable cause to believe that the management office at the Best Choice Inn will contain documentation of financial records for the place of business.  Some of these records are expected to be in the form of ledgers as observed by the DEA UCA.  Others will come from the computer, as observed by Officer Franco when Bhula provided him a list of occupied rooms. Financial records will give an indication of the volume of business conducted at the Best Choice Inn, specifically in regards to how much cash income is generated.  Such information is relevant to this investigation, given the fact that prostitution and narcotics dealing are cash businesses, and the inflated rent is being paid in cash.  Furthermore, there is reason to believe there may be identifying information of the women victimized in this scheme.

Based on source interviews from SOI 4 and SOI 5 throughout this case, there is probable cause to believe that room 222 at the Best Choice Inn will contain evidence of sex trafficking. The evidence in this room is said to be personal belongings of females who were unable to pay the required room fees. The items are said to be stored in room

222 until they are sold. Some of this evidence is expected to be bulk sex worker clothing items and large amounts of condoms. There is also probable cause to believe there may be journals, ledgers, notebooks, and other documents. Based upon my training and experience human trafficking victims often keep personal journals with information about traffickers, ledgers to track payments, and notebooks with information such as phone numbers written in them. There is also probable cause to believe there are illegal narcotics in these two rooms as many sex workers are regular drug users.

Based on source interviews with SOI 4 and SOI 5 throughout this case, there is probable cause to believe that room 115 at the Best Choice Inn will contain evidence of sex trafficking. The evidence in room 115 is said to be personal items there were previously stored in room 222 and are for sale. Some of this evidence is expected to be bulk sex worker clothing items and large amounts of condoms. There is also probable cause to believe there may be journals, ledgers, notebooks, and other documents. There is probable cause to believe there are illegal narcotics in these two rooms as many sex workers are regular drug users. There is also probable cause to believe there may be evidence of monetary transactions in room 115 as SOI 5 advised this is the room in which seized items are sold. This evidence may include cash such as US Currency and documentation of transactions such as receipts.

The totality of the investigation has pointed to the fact that the Best Choice Inn is being primarily utilized as a facility for narcotics and sex trafficking.  In Your Affiant's training and experience, narcotics and sex traffickers can be violent and are known to carry firearms.  Additionally, victims of the sex traffickers that operate the hotel have stated that the sex traffickers do carry firearms (A.S. stated this explicitly in her May 16, 2019 interview with the New Mexico State Police and the Federal Bureau of Investigation).  Also, the DEA have observed a known firearms trafficker, street name "Trigger" (real name Michael Avila) residing in the hotel intermittently.  Also, Willie HORTON has a prior New Mexico state arrest in 2016 for being a felon in possession of a firearm.  In my training and experience, individuals engaged in narcotics and sex trafficking conceal evidence and instrumentalities of their crimes in their residences and rooms. Therefore, I believe that evidence of sex or narcotics trafficking exists in Rooms 105, 110, 112, 114 and 219.

Furthermore, in Your Affiant's training and experience, the victims of sex traffickers are frequently restrained by their traffickers physically and may not be able to open a door if law enforcement is seeking to rescue them.  On the May 5, 2019 welfare check visit to the hotel by APD, numerous doors were not answered that were clearly occupied.

WHEREFORE, I respectfully request that a warrant be issued authorizing Homeland Security Investigations, with appropriate assistance from other law

enforcement officers, to search for, seize, and examine the items set forth above and in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  FURTHER AFFIANT SAYETH NOT.

Special Agent Morgan Langer
Department of Homeland Security
Homeland Security Investigations

Sworn before me by reasonable electronic means this 18th day of June, 2019

United States Magistrate Judge

26

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is described as 7640 Central Avenue SE, Management Office, Albuquerque, New Mexico 87108, is the Rooms 105, 110, 112, 114 and 219, located in a hotel which is called the Best Choice Inn.  The hotel is marked with a blue sign along Central Avenue and the words "Best Choice Inn" on the sign. The hotel is located on the south side of Central Avenue where Central Avenue meets Charleston Street.  The hotel is situated in an "L" formation.   The hotel is adobe/tan in color.

The property to be searched is described as 7640 Central Avenue SE, Albuquerque, New Mexico 87108, Rooms 105, 110, 112, 114 and 219. Rooms 105, 110, 112 and 114 are located on the ground floor of the hotel, while room 219 is located on the second floor.   Like other rooms in the hotel, these rooms are identifiable by having a placard on the door with  the room number inscribed on it.

**ATTACHMENT B**

ITEMS TO BE SEARCHED FOR AND SEIZED

1.    Firearms and Ammunition

Any caliber firearms; ammunition; ammunition components and items connected with or pertaining to the possession of firearms including firearm storage cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment.

2.    Records/Documents

Documents related to the possession of firearms or ammunition, including receipts for the purchase of firearms or ammunition, receipts for the repair of firearms; photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of any firearm storage cases, ammunition magazines, holsters, spare parts for firearms and firearm cleaning equipment.

3.    Documents of sex trafficking victims (anywhere the term victims is used in # 3 of this section denotes sex trafficking victims)

Documents which have what appears to be personal identifying information of victims and or any version of victims' names. such as: personal mail, checkbooks, personal identification, driver's licenses,  notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, loan bills, and vehicle registration, which documents can be connected to a victim or potential victim.

4.    Seizure but not search of, Computers, Cellular Telephones, Tablets, Electronic and/or digital, magnetic and/or optical media and/or device(s) including but not limited to computer hard disc drive(s), computer network hardware, cassette(s), compact disc(s), flash card(s), zip drive(s), floppy diskette(s), CD-ROM(s), CD-RW(s), DVD-RW(s), DVD(s), compact disc(s), digital video disc(s), and/or device(s) capable  of creating, analyzing, displaying, converting, storing and/or transmitting electronic and/or digital, magnetic and/or optical impulses and/or data.

5.    Hotel and travel documents

Documents establishing the renting, purchase or use of hotel/motel rooms and/or establishing  travel purchases such as: fuel receipts, hotel receipts, hotel booking information,

6.    Narcotics

Illegal narcotics and/or any other controlled substance(s) and/or suspected illegal narcotics and/or any other suspected controlled substance(s) including, any drug or substance listed in Schedules I through V of the Controlled Substance Act or regulations adopted thereto.

7.    Indicia of Control of the Hotel and Vehicles

Documents establishing the persons who have control, possession, custody or dominion over the property searched and from which evidence is seized, such as: mail addressed to a named occupant of the residence, checkbooks, personal identification, notes, utility bills, rent receipts, payment receipts, financial documents, keys, photographs, leases, loan bills, and vehicle registration documents, providing such documents establish a connection between and individual and the property.

8.    Condoms in bulk

28

9.      Any item(s) apparently used to restrain and/or control a person.  Any item(s) apparently used to facilitate the restraint and/or control of a person.

10.     Ledgers or other documentation showing suspected drug or human trafficking transactions.
11.     Large sums of U.S. currency.
12.     Large quantities of women's clothing, in particular lingerie and other apparel consistent with prostitution and sex trafficking photo shoots.
13.     Any suspected sex trafficking victims.
14.  All credit card or debit card processing machines.
15.  All hotel surveillance equipment and all closed circuit television equipment. Equipment used to capture events and people at the hotel.